James D. Gardner (8798)
M. Lane Molen (11724)
SNELL & WILMER L.L.P.
15 W. South Temple, Ste. 1200
Salt Lake City, UT  84101
Telephone:  (801) 257-1900
Facsimile:   (801) 257-1800
Email:  jgardner@swlaw.com
           lmolen@swlaw.com

*Attorneys for Defendants Wachovia Mortgage
Corporation and Wells Fargo Bank, N.A.*

### UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES BLACKMORE,<br><br>            Plaintiff,<br><br>vs.<br><br>WACHOVIA MORTGAGE CORPORATION, f.k.a. WORLD SAVINGS BANK; WELLS FARGO BANK, NATIONAL ASSOCIATION; and DOES 1-10,<br><br>            Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Case No.  2:12-CV-250<br><br><br>Judge Dee Benson |

Pursuant to DUCivR 7-1, Defendants Wachovia Mortgage Corporation, f.k.a. World Savings Bank ("**Wachovia**") and Wells Fargo Bank, N.A. ("**Wells Fargo**" and together with Wachovia, the "**Defendants**"), through counsel, respectfully submit this *Memorandum in Support of Motion to Dismiss*, as against the Complaint of Plaintiff James Blackmore ("**Plaintiff**").  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint

should be dismissed in its entirety with prejudice for failure to state a claim upon which relief can be granted.

## **SUMMARY**

This Court should dismiss all causes of action against the Defendants from Plaintiff's Complaint, for failure to state a claim upon which relief can be granted.  After willingly taking on a home loan that he ultimately could not afford, Plaintiff defaulted on the loan.  Plaintiff now asserts a series of unsustainable claims against the Defendants in an attempt to hold them liable for Plaintiff's inability to comply with the terms of the loan.

Plaintiff's claims fail to state a claim upon which relief can be granted.  For the following reasons, each of Plaintiff's causes of action against the Defendants fails as a matter of law:

- Plaintiff's First Cause of Action for Declaratory Relief fails because Defendants have standing to foreclose on the Property, and alleged, unspecified violations of the Uniform Commercial Code do not preclude Defendants' right to conduct non-judicial foreclosure proceedings.

- Plaintiff's Second Cause of Action Injunctive Relief fails because Plaintiff has not (and cannot) establish a basis for granting the injunction; rather, his claims are all subject to dismissal.

- Plaintiff's Third Cause of Action for Negligent Misrepresentation fails because they are based upon the Home Affordable Modification Program ("HAMP")— which provides no private right of action, and because they are barred by the economic loss doctrine.

- Plaintiff's Fourth Cause of Action for "Breach of the Implied Covenant to Negotiate in Good Faith and Fair Dealing" fails because they are based on HAMP, which provides no private right of action, Plaintiff cannot use the implied

covenant to establish new, independent rights or duties to which the Defendants did not agree, and because his claims of an oral modification are barred by the statute of frauds.

- Plaintiff's Fifth Cause of Action for "Detrimental Reliance" fails because it is barred by the economic loss doctrine, and because Plaintiff could not have reasonably relied upon the purported misrepresentation.

- Plaintiff's Sixth Cause of Action for "Breach of Contract" as a third party beneficiary of HAMP contracts entered into between Defendants and agents or entities of the United States government fail because HAMP bestows no private right of action upon borrowers.

- Plaintiff's Seventh Cause of Action for violations of the Utah Consumer Sales Practices Act ("**UCSPA**") fails because Plaintiff's loan (the "**Loan**") was not a "consumer transaction," and none of the Defendants are a "supplier" as those terms are defined under UCSPA.  Further, UCSPA does not apply to conduct regulated by other state or federal law, such as mortgage loans.

- Plaintiff's Eighth Cause of Action for violations of the Truth in Advertising Act fails because Plaintiffs did not provide notice to the Defendants prior to filing the lawsuit, because no "goods and services" were involved, and because the Truth in Advertising Act does not apply to practices otherwise governed by federal or state law.

- Plaintiffs' Seventh Cause of Action for violations of the Fair Debt Collection Practices Act ("**FDCPA**") fail because none of the Defendants meet the statutory definition of a "debt collector."

- Plaintiff's Ninth Cause of Action for violations of the Real Estate Settlement Procedures Act ("**RESPA**") fails because Plaintiff's alleged queries to Wachovia did not qualify as a qualified written request under the statute, and because Plaintiff has failed to plausibly allege any actual damages based on the purportedly deficient response by Wachovia to Plaintiff's communications.

In summary, each of Plaintiff's Causes of Action fails as a matter of law. Accordingly, the Complaint should be dismissed with prejudice in its entirety for failure to state a claim upon which relief may be granted.

## STATEMENT OF RELEVANT FACTS

The following are taken from Plaintiff's Complaint and/or public records and are presumed to be true for purposes of this Motion:

1.      On or about January 17, 2007, Plaintiff James Blackmore, along with Kathryn Blackmore, executed a deed of trust (the "**Trust Deed**") to secure the performance of the loan obligation under a promissory note (the "**Note**").[1] WSB was named as Beneficiary under the Loan documents.  See Note and Trust Deed attached as Exhibits A and B, respectively.

2.      The Trust Deed secured property situated in Washington County, State of Utah, at 1234 Cholla Circle, Toquerville, and more particularly described as Lot 28, CHOLLA CREEK PLANNED UNIT DEVELOPMENT, PHASE lB, Amended and Extended, according to the official plat thereof on file and of record in the Washington County Recorder's Office (the "**Property**").  See Trust Deed.

3.      Plaintiff subsequently defaulted on his obligation to make timely monthly payments, as set forth in the Note.  As a result, a Notice of Default was recorded on or about

---

[1] Ms. Blackmore is not a plaintiff in this case and is likely a required party under Rule 19 of the Federal Rules of Civil Procedure.

November 7, 2008 with the Washington County Recorder's Office.  See Notice of Default, attached hereto as Exhibit C.

## ARGUMENT

Although not pled as a cause of action, Plaintiff alleges a number of violations of the Truth in Lending Act ("**TILA**") in the general allegations.  (Compl., ¶¶ 19-21.)  These claims, and any claims related to Loan origination or terms of the Loan fail for several reasons.  First, they are time-barred and fail as a matter of law because they were not brought within one year of the purported TILA violations.   TILA expressly provides that a plaintiff must bring claims for damages under TILA within one year "from the date of occurrence of the violation." 15 U.S.C. §1640(e).[2]

Second, Plaintiff's claims are barred by *res judicata*.  Specifically, a final and binding decision was entered in the Northern District of California class action matter captioned In re Wachovia Corporation "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation, No. 09-md-02015 (N.D. Cal. 2009) (the "Pick-A-Payment Class Action") (A copy of the final order is attached hereto as Exhibit D).[3]  In the Pick-A-Payment Class Action, a class of borrowers asserted claims against Wachovia Mortgage, as successor to World Savings Bank, F.S.B., alleging violations of TILA, as well as various state law claims predicated on an alleged failure to, among other things, adequately disclose the potential for negative amortization of the Pick-A-Payment loans, and related information.  As part of the class settlement, class members

_____

[2] See also  Sanders v. Ethington, CN: 2:10-cv-00183, 2010 U.S. Dist. LEXIS 133996, * 7 (D. Utah Dec. 15, 2010) ("15 U.S.C. § 1640(e) clearly places a one-year time limit on a private person's ability to bring a damages claim for TILA violations.").

[3] Public records are properly considered on Rule 12(b)(6) motions to dismiss because they are matters of which a judge may take judicial notice.  See James Wm. Moore et al, Moore's Federal Practice ¶ 12.34[2] (3d ed. 1997); Paik-Apau v. Deutsche Bank Nat'l Trust Co., 2012 U.S. Dist. LEXIS 11203, * 6-7, fn. 1 (D. Hawaii Jan. 31, 2012) (the court can take judicial notice of class action settlement pleadings).

fully and permanently released all such claims.  Plaintiff is a <u>Pick-A-Payment</u> Class Member who did not opt out after receiving Notice and is accordingly precluded from relitigating such claims.[4]  <u>See</u> April 27, 2012 Declaration of Amy Lake, attached hereto as Exhibit E.

<u>Third</u>, any predatory lending claim is federally preempted because this loan was originated by World Savings Bank, FSB,[5] the lending practices of which were, at the time of loan origination, completely regulated by the Office of Thrift Supervision ("OTS"), pursuant to the Home Owners Loan Act of 1933, 12 U.S.C. § 1462 *et seq*. ("HOLA"), through which Congress gave the OTS broad authority to issue regulations governing federal savings associations, such as World Savings Bank.[6]  Accordingly, Defendant's asserted predatory lending defense is plainly preempted by HOLA.

---

[4] <u>Fisher v. Ameriquest Mortgage Co.</u>, No. 07-2287, 2011 WL 2294245 (Pa. Com. Pls. May 10, 2011) (citations and quotations omitted) (borrower's fraud and predatory lending claims barred by *res judicata* where a final settlement was approved in the class action and borrower did not opt out of settlement class after receiving notice).  "The application of *res judicata* principles in class actions is consistent with general principles of *res judicata,* and the essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the parties had an opportunity to appear and assert their rights." <u>Id.</u> (quoting <u>Clark v. Pfizer. Inc.</u>, 990 A.2d 17, 31 (Pa. Super. 2010)).  If a party does not opt out of a class action after receiving constitutionally adequate notice, the prior and pending suits are deemed to involve the same parties for purposes of *res judicata.* <u>Id.</u> (quoting <u>Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.</u>, 902 A.2d 366, 378-379 (Pa. 2006)).

[5] The HOLA preemption of state law loan origination claims remains throughout the life of a loan issued by a federal savings bank and is not extinguished by virtue of a subsequent merger. *See, e.g., Taguinod v. World Savings Bank, FSB*, 755 F.Supp. 2d 1064 (C.D. Cal. 2010).

[6] The OTS issued the following regulation, in relevant part: "OTS hereby occupies the entire field of lending regulation for federal savings associations. … [which] may extend credit as authorized under federal law, including this part, <u>without regard to state laws purporting to regulate or otherwise affect their credit activities…</u>"  12 C.F.R. § 560.2(a)  (emphasis added); <u>see also</u> 12 C.F.R. § 560.2(b) (specifying specific types of state laws that are preempted, including, but not limited to those relating to terms of credit, amortization of loans, deferral and capitalization of interest, loan related fees and charges and advertisements).

# I.    PLAINTIFF'S DECLARATORY JUDGMENT/QUIET TITLE CAUSE OF ACTION FAILS AS A MATTER OF LAW.

In his First Cause of Action for "Declaratory Judgment/Quiet Title," Plaintiff claims he is entitled to a number of declarations from this Court.  (Compl., ¶¶ 73-98.)  For the reasons set forth below, however, Plaintiff is not entitled to any of the declarations he seeks, and Plaintiff's First Cause of Action should be dismissed as a matter of law.

## A.  Defendants Have Standing to Foreclose on the Property.

Plaintiff claims that he is entitled to a declaration that Defendants lack standing to foreclose on the Property because they "are not true holders in due course of Plaintiff's promissory note, [and] have failed to establish an interest in the property."  (Compl., ¶ 75.) Plaintiff further claims Defendants "have no lawful right to foreclose."  (Id., ¶¶ 76, 87-93.)[7] While it is not entirely clear, this claim presumably stems from Plaintiff's allegation that "neither WSB nor Wachovia have provided Plaintiff evidence of a properly negotiated promissory note" and that as a result, "Plaintiff is not certain that he actually owes Wachovia under the terms of the promissory note."  (Id., ¶ 31.)

This claim fails as a matter of law because Defendants are not required to produce the actual negotiated promissory note in order to initiate foreclosure proceedings.  This Court has repeatedly held that "Utah law on non-judicial foreclosure contains no requirement that the beneficiary produce the actual note in order to authorize the trustee to foreclose on the property secured by the note."  McGinnis v. GMAC Mortgage Corp., No 2:10-CV-301TC, 2010 U.S.

---

[7] Plaintiff also claims he is entitled to a declaration that Defendants violated Utah Code Ann. § 57-1-31.5 because "Wachovia and/or its appointed Trustee failed to supply" payoff information within five business days of Plaintiff's request.  (Compl., ¶¶ 78-83.)  Contrary to Plaintiff's assertions, however, there is no requirement under Utah Code Ann. §57-1-31.5 for a lender to provide a payoff statement.  The statute refers only to the duty of the Trustee, and does not provide for any liability of the beneficiary of the Trust Deed.  Indeed, there is not so much as even a reference to the beneficiary or lender found in Utah Code Ann. §57-1-31.5.  Plaintiff has not named the Trustee under the Trust Deed as a defendant in this action. This claim thus fails as a matter of law.

Dist. LEXIS 90286, 2010 WL 3418204 at *2 (D. Utah Aug. 27, 2010);  Wade v. Meridias et al,

Case No. 2:10-CV-998 DS, 2011 U.S. Dist. LEXIS 28414 (D. Utah Mar. 17, 2011) ("Possession

and proof of the Note are not a requirement for non-judicial foreclosure.");  Fowler v.

ReconTrust Company, N.A., No. 2:10-CV-1143 DS, 2011 U.S. Dist. LEXIS 24793 (D. Utah

Mar. 10, 2011) ("To the extent Plaintiffs argue that the note must be presented or proved before

foreclosing non-judicially, Defendants correctly note that this 'show me the note' position has

been rejected.");  Rhodes v. Wells Fargo Home Mortg., 2010 U.S. Dist. LEXIS 84199 (D. Utah

Aug. 16, 2010) ("Standing is not an issue, and the discussion on commercial paper, although

interesting, is irrelevant.").[8]

### B. The Uniform Commercial Code is Irrelevant to Non-Judicial Foreclosure Proceedings.

Plaintiff also claims that Defendants are not entitled to enforce the Deed of Trust because

they have committed unspecified violations of Article 3 of the Uniform Commercial Code

(U.C.C.).  This claim fails for at least two reasons.  First, Plaintiff's conclusory allegations of

completely unspecified violations of the Uniform Commercial Code cannot overcome a motion

to dismiss.  The Court "need not accept conclusory allegations without supporting factual

averments" in granting a motion to dismiss.  Estrada v. Aurora Loan Services, LLC, 2010 U.S.

Dist. LEXIS 124865, *5, (D. Utah November 23, 2010) (quoting GFF Corp. v. Associated

Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)); see also Ashcroft v. Iqbal, 129

S. Ct. 1937, 1949-50 (2009) (holding that "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions").

---

[8] In any event, Plaintiff's concern about who is the "true holder" of the Note is misplaced.  Plaintiff
acknowledges that the Note was executed in favor of WSB, Defendants' predecessor-in-interest.   There
was never any "transfer[] of ownership" from WSB to Wachovia, because Wachovia acquired WSB's
parent Golden West Financial Corporation, effective October 1, 2006[8]–well before Plaintiff entered into
the Loan in January of 2007.  Thus, WSB was a subsidiary of Wachovia at the time Plaintiff entered into
the Loan, and as a result Plaintiff's concerns about Wachovia's standing are unfounded.

Second, these claims fail because U.C.C. Article 3's provisions regarding the requirements for the payment of a note have no application to non-judicial foreclosures of a deed of trust as a matter of law.  In Contreras v. U.S. Bank as Trustee for CSMC Mortg. Backed Pass-through, the United States District Court for the District of Arizona rejected the "assertion that exercising the power of sale granted by statute and [by] the Deed of Trust requires compliance " with U.C.C. Article 3. Case No. CV09-0137-PHX-NVW, 2009 U.S. Dist. LEXIS 121944, (D. Ariz. 2009) (unpublished).[9]  Thus, Plaintiff's first cause of action fails as a matter of law.

## II.     PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.

In his Second Cause of Action for Injunctive Relief, Plaintiff seeks to prevent the Defendants from undertaking any actions in furtherance of foreclosing on the Property.  (Compl., ¶ 266.)  "A party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."  Fisher v. Okla. Health Care Auth., 335 F.3d 1175, 1180 (10th Cir. 2003).  Based on the foregoing, Plaintiff has failed to establish the first, and most fundamental element of a request for injunctive relief—a basis for granting the injunction.  Rather, his claims are all subject to dismissal—for the reasons set forth in Parts I and III-IX, below.  Furthermore, Plaintiff has not and cannot meet his burden of establishing the remaining elements necessary to obtain injunctive relief.

---

[9] This Court recently rejected arguments that the requirements of Section 9a of the U.C.C. to "perfect any right of enforcement" should apply.  Marty v. Mortgage Electronic Registration Systems, et al., 2010 U.S. Dist. LEXIS 111209,  No. 1:10-cv-00033 CW, p. 6 (D. Utah Oct. 19, 2010) (unpublished)(holding "the Utah Deed of Trust Act expressly governs the security interest in question" and that "any reliance on [Article 9 of the U.C.C.] is improper").

### III.    PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM FAILS AS A MATTER OF LAW.

In his Third Cause of Action for Negligent Misrepresentation, Plaintiff claims that the Defendants made negligent misrepresentations in connection with Plaintiff's desire to obtain a loan modification, including that he would "not be in foreclosure until it made a decision on the loan modification" under the HAMP program.  (Compl., ¶ 106.)  Plaintiff further claims that he is entitled to have "the foreclosure to be ordered to stop until Wachovia complies with [HAMP] and the new settlement agreement entered into on February 9th, 2012."  (Id., ¶ 111.)  As an initial matter, Plaintiff has not pled that a foreclosure sale has taken place or that one is currently scheduled.[10]   In any event, however, this claim fails as a matter of law for at least two reasons.

First, Plaintiff's claims are barred because it is well settled that no rights are conferred upon borrowers under HAMP.  HAMP does not require lenders to modify loans.  Rather, it merely requires lenders "to consider borrowers for loan modifications and suspend foreclosure activities while a given borrower [is] being evaluated for a modification."  Marks v. Bank of America, 2010 U.S. Dist. LEXIS 61489, n.3, *14-15 (D. Ariz. June 22, 2010) (unpublished)(emphasis added).  Thus, HAMP did not entitle Plaintiffs to a loan modification from Defendants.  Id. at *8; James v. Wells Fargo Bank, NA, Case No. 2:10-CV-1205 TS, 2011 U.S. Dist. LEXIS 53077, *7 (D. Utah May 17, 2011) ("To the extent that Plaintiffs argue that they are entitled to a modification under HAMP, it must be rejected.").  More importantly, "there is no private right of action under HAMP."  Shurtliff v. Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 117962, *10 (D. Utah Nov. 5, 2010) (unpublished).  Since there is no private right of action under HAMP, "any claims that Plaintiff[s] may bring under that program must be

---

[10] The foreclosure sale previously scheduled for February 28, 2012 was eventually cancelled as a result of the bankruptcy action filed by Plaintiff's wife. (In re Kathryn J. Blackmore, Case No. 12-22199.)  The bankruptcy court granted the Trustee's Motion for Relief from the Automatic Stay on April 10, 2012. (Id., at Dkt. No. 15.)

dismissed." Id.; see also Eyre v. GB Mortg., LLC, 2011 U.S. Dist. LEXIS 55429, *10-11 (D. Utah May 23, 2011) (a negligent misrepresentation claim cannot be based on HAMP because there is no private right of action). Here, Plaintiff's claims all depend upon his allegations that he somehow relied upon the promise of an eventual loan modification that he ultimately did not get. (Compl., ¶¶ 107-110.)

Second, this claim is barred by the economic loss doctrine. When the relationship between the parties is contractual, the economic loss rule in Utah provides that "economic damages are not recoverable in negligence absent physical property damage or bodily injury." SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc., 28 P.3d 669, 680 (Utah 2001). The purpose of this doctrine is to "'mark[] the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care.'" Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC, 221 P.3d 234, 242 (Utah 2009) (quoting SME Indus., 28 P.3d at 680). This Court has specifically applied the economic loss doctrine to negligent misrepresentations in similar circumstances. See Gallagher v. Alliance Bancorp, 2011 U.S. Dist. LEXIS 75778 * 10-11 (D. Utah July 13, 2011) (unpublished) ("under the doctrine of economic loss, a plaintiff cannot bring a tort claim when the conflict arises out of a contract, unless there is an independent, non-contractual duty. This doctrine applies to negligent misrepresentation claims."). It is undisputed in this case that the parties' relationship in this case is governed by the Loan contracts. "Defendants cannot be held liable for performing under the Note and Deed of Trust." Andersen v. Homecomings Fin., LLC, 2011 U.S. Dist. LEXIS 65897 (D. Utah June 20, 2011). Thus, this claim fails as a matter of law because Plaintiffs only allege economic losses.

**IV.  PLAINTIFF'S IMPLIED COVENANT CLAIM FAILS AS A MATTER OF LAW.**

Plaintiff's Fourth Cause of Action is for "Breach of Implied Covenant to Negotiate in Good Faith and Fair Dealing."  Plaintiff's primary contention in this cause of action appears to be that he was told that if he was current on his Loan he would not qualify for a HAMP modification, and that Defendants told him his modification application was being processed but ultimately did not grant him a modification of his Loan.  These claims fail as a matter of law for the following reasons.

As a threshold matter, as set forth above, this claim fails to the extent it is based on HAMP as "there is no private right of action under HAMP."  Shurtliff , 2010 U.S. Dist. LEXIS 117962 at *10.  Since there is no private right of action under HAMP, "any claims that Plaintiff[s] may bring under that program must be dismissed."  Id.

Next, this claim fails because Defendants had no obligation to Plaintiff to modify his loan or to follow any particular procedures in the course of considering his application for a loan modification.  Any purported obligation to Plaintiff to modify his Loan or to follow any particular procedures with respect to a Loan modification would serve to establish new, independent rights or duties.  Under Utah law, while the implied covenant is present in every contract, it is limited in important ways.  It cannot be used to "establish new, independent rights or duties to which the parties did not agree."  Oakwood Vill. L.L.C. v. Albertsons, Inc., 104 P.3d 1226, 1240 (Utah 2004) (citing Brehany v. Nordstrom, Inc., 812 P.2d 49, 55 (Utah 1991)).  It also cannot form the basis for "rights and duties inconsistent with express contractual terms."  Id. (internal quotation marks omitted).  The Loan documents do not contemplate procedures for applying for or negotiating a modification of the clear contractual obligations; indeed, they do not contemplate any right to a loan modification, workout or any other such relief.  Brockbank v.

<u>JPMorgan Chase Bank, N.A.</u>, 2012 U.S. Dist. LEXIS 48496 (D. Utah Apr. 4, 2012) (holding no breach of the implied covenant due to not receiving a HAMP loan modification because lender had no contractual duty to modify); <u>see also</u>, <u>Aparicio v. Wells Fargo Bank, N.A.</u>, Case No. 2:11-cv-00495 2011 U.S. Dist. LEXIS 128235 (D. Utah Oct. 17, 2011) (unpublished) (Magistrate recommendation adopted at <u>Aparicio v. Wells Fargo Bank, N.A.</u>, 2011 U.S. Dist. LEXIS 127692 (D. Utah, Nov. 2, 2011)).  To the contrary, Plaintiff was required to meet his obligations under the Loan documents to make payments on time and had no contractual right to any modification of his obligations.  The Trust Deed expressly states that upon default, the Lender "may take action to have the Property sold."  Trust Deed, § 28.  Similarly, Plaintiff's claim that Wachovia violated the implied covenant by not making Plaintiff "aware of their (*sic*) federal rights and contractual rights granted by their FHA insurance" (Compl., ¶ 121) fails, because it would impose a new, independent duty on the part of Wachovia, to which the parties never agreed.

Plaintiff also claims that he was not allowed by Wachovia to make "partial payments." (Compl., ¶ 129.)  This claim is confusing at first glance because it implies that Defendants refused to let him meet his Loan obligations.  However, Plaintiff does not allege that he made payments that were denied, or that checks were returned, only that he asked Defendants if he could merely make "partial payments."  Indeed, this claim becomes clearer when read in conjunction with other allegations—that Plaintiff chose not to make the full mortgage payments to which he was obligated to make under the Loan documents, because he believed doing so would give him the best chance at obtaining loan modification.  (See Compl., ¶¶ 125 ("[Plaintiff] was told . . . numerous times by multiple parties to not make payments"), 131 ("multiple representatives from Wachovia all told Plaintiff not to make payments and that his loan modification would be harmed if he did."))  Again, Plaintiff was contractually obligated under

the Loan documents to make full payments each month.  See Note, §7(B) ("I will be in default if … I do not pay the full amount of each monthly payment on the date it due."); Trust Deed, § 28 ("It will be called a 'Breach of Duty' if … I do not pay the full amount of each monthly payment on the date it due.").  Plaintiff chose not to make payments and to breach his obligation under the Loan documents.

Next, Plaintiff's claims that Defendants somehow breached a modified Loan agreement and his obligation to make payments was excused all fail because there is no written agreement and any purported verbal agreement is barred by the statute of frauds.  Specifically, Plaintiff asserts that "[c]learly, all the parties contemplated a new loan to supersede the old and the duty to perform (i.e. make payment) by Plaintiff was excused."  (Compl., ¶ 131.)  It is black letter law that "[a]ny alleged oral agreement to modify the original note and deed of trust is barred by Utah's statute of frauds, which requires the loan agreement to be in writing."  Brockbank v. JPMorgan Chase Bank, N.A., 2012 U.S. Dist. LEXIS 48496 (D. Utah Apr. 4, 2012) (citing Utah Code Ann. § 25-5-3 and Zion's Properties, Inc. v. Holt, 538 P.2d 1319, 1322 (Utah 1975)).  Further, the Trust Deed expressly requires any modification to be "in writing signed by Borrower and Lender."  Trust Deed, §23.[11]

---

[11] It is unclear how Plaintiff has suffered any actual damages as a result of the purported breaches.  Plaintiff asserts that he was damaged because he "could have easily made arrangements to reinstate the loan if necessary, but … did not do so because of the representations made by Wachovia."  (Compl., ¶ 129.)  It is unclear how Plaintiff could have been damaged by this as no foreclosure sale has occurred as of the time of this writing.  Indeed, Plaintiff's own assertion that he can "easily make arrangements" to reinstate the Loan and bring it current undermines any allegation of actual damages and serves only to demonstrate that Plaintiff chose to default on the Loan.

### V.     PLAINTIFF'S CLAIM FOR "DETRIMENTAL RELIANCE" FAILS AS A MATTER OF LAW.

In his Fifth Cause of Action for "Detrimental Reliance," Plaintiff claims that Wachovia representatives told him that he should not make his mortgage payments "due to the ongoing modification and change of servicing."  (Comp., ¶ 135.)  Plaintiff further alleges that he relied on these representations to his detriment by not making payments, and that he now faces foreclosure as a result.  (Compl., ¶¶ 136-141.)  This claim fails as a matter of law.

Regardless of how it is captioned, this claim is in fact another cause of action for negligent misrepresentation.  As set forth above, this claim is barred by the economic loss doctrine.  (See supra, Part III.)  Indeed, this Court has held on more than one occasion that that a negligent misrepresentation claim based on the alleged statement that the borrower should stop making payments to seek a modification is barred by the economic loss doctrine.  See Andersen v. Homecomings Fin., LLC, 2011 U.S. Dist. LEXIS 65897, *26-28 (D. Utah June 20, 2011); Higley v. Suntrust Mortg., Inc., 2012 U.S. Dist. LEXIS 16484 (D. Utah Feb. 8, 2012) (same).

Furthermore, Plaintiff could not have reasonably relied upon such a representation because it is contrary to the Trust Deed he signed, which plainly states that if Plaintiff fails to make monthly payments in full, the beneficiary will have the right to "have the Property sold." Trust Deed, § 28.  Similarly, Plaintiff could not have reasonably relied upon any alleged "misrepresentations regarding the terms of Plaintiffs' loan" as those terms are set forth in the loan documents that Plaintiff signed.

Plaintiff also cannot show reasonable reliance because he does not allege that he was told that being delinquent was the only qualification for obtaining a loan modification or that by becoming delinquent he was guaranteed to have a loan modification.  Thus, he could not have

reasonably relied upon such a statement to believe he was entitled to a modification on that basis alone.

## VI.    PLAINTIFF'S CLAIMS BASED ON HAMP FAIL AS A MATTER OF LAW.

In his Sixth Cause of Action for "Breach of Contract – Third Party Beneficiary", Plaintiff claims that he is a "third party done beneficiary" of HAMP contracts entered into between Wachovia and agents or entities of the United States government.  (Compl., ¶ 155.)  As a result, Plaintiff claims that because Wachovia "failed to perform" a modification of his Loan he is therefore entitled to "compel specific performance to modify [his] loan."  (Id., ¶¶ 159, 162.) This claim fails as a matter of law.

As set forth above, Plaintiff is not entitled to a modification of his Loan under HAMP, and he has no private right of action to enforce any provision of HAMP.  Plaintiff's claim that he is a third party beneficiary to HAMP does not salvage this claim.  Courts around the country have, "with near unanimity" rejected borrowers' claims to being a third-party beneficiary to the HAMP agreement between the lender and the federal government.  Gale v. Aurora Loan Servs., 2011 U.S. Dist. LEXIS 53577 (D. Utah May 18, 2011)(unpublished).  As a result, Plaintiff's claims relying upon alleged violations of HAMP should also be dismissed as a matter of law.

## VII.    PLAINTIFF'S UCSPA CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's Seventh Cause of Action for violations of the Utah Consumer Sales Practices Act ("UCSPA") fails as a matter of law for at least three reasons.

First, Plaintiff's Loan was not a "consumer transaction" within the meaning of the UCSPA, as Plaintiff alleges.  (Compl., ¶ 167.)  A mortgage loan is not a "consumer transaction" within the scope of the Act.  See Utah Code Ann. §13-11-3-(2); see also Ayala v. Am. Home Mortg. Servicing, 2011 U.S. Dist. LEXIS 84625 (D. Utah June 8, 2011)(unpublished) (Magistrate recommendation adopted at 2011 U.S. Dist. LEXIS 85001 (D. Utah July 30, 2011).)

Rather, a "consumer transaction" is "a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance)." Id.

Second, none of the Defendants is a "supplier" within the meaning of the UCSPA, as Plaintiff alleges. (Compl., ¶ 165.) A "supplier" means "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." Utah Code Ann. §13-11-3-(6). As set forth above, a mortgage loan is not a "consumer transaction" and thus none of the Defendants can be characterized as a "supplier" for the purposes of the UCSPA.

Third, Plaintiff's UCSPA claims fail because the UCSPA specifically states that it does not apply to conduct regulated by other state or federal law. See Utah Code Ann. §13-11-22(1)(a). Thus, to the extent Plaintiff's allegations are contemplated under HAMP, or any other federal statutory regime, they cannot be subject to relief under the UCSPA.[12] Further, Utah has comprehensive regulations related to foreclosures and trust deeds. Burnett v. Mortg. Elec. Registration Sys., 2009 U.S. Dist. LEXIS 100409, * 12-14 (D. Utah Oct. 26, 2009) (unpublished) (dismissing UCSPA claim, recognizing that the UCSPA did not apply to similar claims because Utah law had comprehensive regulations related to foreclosures and trust deeds). As a result, this Court should dismiss Plaintiff's Seventh Cause of Action.

## VIII.   PLAINTIFF'S TRUTH IN ADVERTISING ACT CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's Eighth Cause of Action alleges a number of violations of the Utah Truth in Advertising Act (the "**Advertising Act**"), Utah Code Ann. § 13-11a-1, et seq. (Compl., ¶¶ 175-

---

[12] To the extent Plaintiff's claim under UCSPA is based upon the fact that he did not receive a modification of his Loan under HAMP (See, Compl., ¶ 172), it fails for the additional reason that HAMP does not entitle him to a modification—as set forth above. See infra, Parts III, VI.

185.)  All of Plaintiff's claims under the Advertising Act, however, fail as a matter of law for at least three reasons.

First, Plaintiff does not allege that he provided notice to Defendants before filing this lawsuit, as he was required to do under the Advertising Act.  See U.C.A. 13-11a-4(5); see also David L. v. BAC Home Loans Servicing, LP, 2011 U.S. Dist. LEXIS 48844, *7-8 (D. Utah May 5, 2011) (citing Proctor & Gamble Co. v. Haugen, 947 F. Supp. 1551, 1555 (D. Utah 1996)). Since such notice is a prerequisite to bringing a claim pursuant to the Advertising Act, according to its plain language, Plaintiff's Eighth Cause of Action is deficient on its face.

Second, there can be no violation of the Advertising Act here, because no "goods and services" were involved.  Plaintiff claims that Defendants violated various provisions of the Advertising Act with respect to particular "goods and services."  (See Compl., ¶ 177.)  It appears Plaintiff is alleging that the "goods and services" involved were the Loan and a potential loan modification.  "Goods and services" are defined under the Advertising Act as "all items which may be the subject of a sales transaction."  Utah Code Ann.  § 13-11a-2(4).  However, neither the original Loan agreement nor any potential loan modification can be the subject of a "sales transaction" as Plaintiffs allege.  Under the Advertising Act, a "sales transaction" is defined as

> a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance), to a person or business, or a solicitation or offer by a supplier with respect to any of these transfers or dispositions. It includes any offer or solicitation, any agreement, and any performance of an agreement with respect to any of these transfers or dispositions.

13-11a-2(15).  This above language is substantially similar to the definition of "consumer transaction" under the Utah Consumer Sales Practices Act.  See Utah Code Ann. §13-11-3-(2). In interpreting that similar language, this Court has already determined that a mortgage loan cannot constitute a "consumer transaction" within the scope of the Act.  See Ayala v. Am. Home

18

Mortg. Servicing, 2011 U.S. Dist. LEXIS 84625 (D. Utah June 8, 2011) (Magistrate

recommendation adopted at 2011 U.S. Dist. LEXIS 85001 (D. Utah July 30, 2011).)  Similarly,

neither does a mortgage loan, nor efforts or communications relating to a possible modification

of its terms, constitute a "sales transaction."

      Third, Plaintiff's Advertising Act claims fail for the additional reason that the

Advertising Act "do[es] not apply to practices permitted and governed by federal or state law."

David L. v. BAC Home Loans Servicing, LP, 2011 U.S. Dist. LEXIS 48844 (D. Utah May 5,

2011).  Here, Plaintiff appears to allege the "sales transaction" at issue is the Loan agreement or

the potential modification of its terms.  Thus, to the extent Plaintiffs' allegations are

contemplated under RESPA, TILA, or any other federal statutory regime, they cannot be subject

to relief under the Advertising Act.  Furthermore, Utah has comprehensive regulations related to

foreclosures and trust deeds, as set forth above.[13]

## IX.     PLAINTIFF'S RESPA CLAIMS FAIL AS A MATTER OF LAW.

      Plaintiff's Ninth Cause of Action alleges that the Defendants violated 12 U.S.C. §2605(e)

of RESPA by failing to properly respond to a purported Qualified Written Request (the

"Purported QWR").  Specifically, Plaintiff claims that Wachovia failed to provide a sufficient

response to the Purported QWR because Wachovia did not provide: (i) evidence "that Wachovia

was in possession of a properly negotiated promissory note"; and (ii) an accounting for

reinstatement and/or payoff.  (Compl., ¶¶ 188-89.)  This claim fails as a matter of law for at least

two reasons.

      First, the "violations" alleged by Plaintiff are not actually violations of any provision of

12 U.S.C. § 2505(e) because they were not requests for information about the servicing of

Plaintiff's Loan as defined by RESPA.  A qualified written request under RESPA

---

[13] See infra, part VII.

> relates only to the 'servicing' of the loan, which is defined as requests relating to the 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

King v. Am. Mortg. Network, 2010 U.S. Dist. LEXIS 92210, * 5 (D. Utah Sept. 1, 2010) (citing 12 U.S.C. § 2505(i)(3)).

This Court has specifically held that "demand[s] to produce loan documents for inspection" are not qualified written requests because they do not relate to the servicing of the loan.  Id. at *6; see also Kohout v. Bank of Am. Home Loans, 2011 U.S. Dist. LEXIS 93951, 12-13 (D. Colo. July 29, 2011) (demand to produce loan documents as evidence that it was the holder of the Loan does not qualify as a qualified written request).  Thus, Wachovia was not required to provide evidence of a properly negotiated promissory note.  Similarly, a request for information regarding reinstatement of a defaulted mortgage loan does not fall under the definitions of "servicing."  See Moore v. FDIC, 2009 U.S. Dist. LEXIS 110979 (N.D. Ill. Nov. 30, 2009).

Second, Plaintiff's RESPA claims fail as a matter of law because Plaintiff failed to allege—and cannot show—any actual damages as a result of the purportedly deficient response to the alleged QWR, other than conclusory claims. (Compl., ¶ 193.)  Courts across the country have consistently held that "a plaintiff who alleges a breach of § 2605 without alleging damages fails to state a cause of action."  McWilliams v. Chase Home Fin., LLC, CN: 4:09CV609, 2010 U.S. Dist. LEXIS 43549, * 12 (E.D. Mo. May 4, 2010).  The federal court for the District of Utah has similarly held that "RESPA requires borrowers to show actual damages as a result of a failure to . . . respond or delay in responding to the QWR."  Thayne v. Taylor, Bean & Whitaker Mortgage Co., CN: 1:09-CV-141, 2010 U.S. Dist. LEXIS 94721, *7 (D. Utah September 10, 2010) (citing 12 U.S.C. § 2605) (emphasis added).

The Complaint lacks plausible allegations as to how the alleged deficiency in responding to the QWR caused Plaintiff any damages.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.");  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (a plaintiff must "nudge[ ][his] claims across the line from conceivable to plausible" to survive a motion to dismiss).  Plaintiff claims that he suffered damages in the amount of $150,000.00 as to "principal reduction and other interest and fees to be waived through a loan modification."  (Compl., ¶ 193.)  However, Plaintiff cannot possibly have been damaged by a failure to get a loan modification, because he had no right to such a modification in the first place.  In short, he lost nothing.  Moreover, Plaintiff does not allege that his inability to obtain a loan modification was the result of a deficient response by Defendants to his purported QWR.  As to Plaintiff's conclusory allegations that he suffered "lost wages and emotional distress," these allegations are insufficient to overcome a Rule 12(b)(6) motion.  As set forth above, the Court "need not accept conclusory allegations without supporting factual averments" in granting a motion to dismiss.  Estrada v. Aurora Loan Services, LLC, 2010 U.S. Dist. LEXIS 124865, *5, (D. Utah November 23, 2010) (quoting GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)); see also Molina v. Wash. Mut. Bank, CN: 09-CV-00894-IEG, 2010 U.S. Dist. LEXIS 8056, *20-21 (S.D. Cal. Jan. 29, 2010) (observing that "[n]umerous courts have read Section 2605 as requiring a showing of pecuniary damages in order to state a claim" and dismissing claim with only conclusory allegation as insufficient).  Therefore, Plaintiff's RESPA claims fail.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

DATED this 30th day of April, 2012.

SNELL & WILMER L.L.P.


/s/ James D. Gardner
M. Lane Molen
James D. Gardner
*Attorneys for Defendants Wachovia Mortgage
Corporation and Wells Fargo Bank, N.A.*

### CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of April, 2012, a true and correct copy of the

foregoing was caused to be served by CM/ECF on the following:

Roger J. Sanders
Benjamin S. Ruesch
Sanders Ruesch & Reeve, PLLC
55 S 300 West, Ste 1
Hurricane, UT 84737


 /s/ James D. Gardner

14925464